FILED
SUPERIOR COURT
OF GUAM

2018 FEB 22 PM 4: 29

CLERK OF COURT
By:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM,<br><br>                              Plaintiff,<br><br>vs.<br><br>MARVIN RECHIM (aka Marvin Moses, aka Marvelous Rechin, aka John Doe), and JOSEPH RECHIM (aka John Doe),<br><br>                              Defendants. | **Superior Court Case No. <u>CF0416-17</u>**<br><br>**DECISION AND ORDER**<br><br>**Re**<br><br>**MOTION TO SUPPRESS ALL WRITTEN AND VERBAL STATEMENTS** |

Defendant Marvin Rechim seeks to suppress a series of statements made to the police while being Mirandized at the scene, after being Mirandized, and after signing a written waiver of his Fifth Amendment rights. At a January 26, 2018 evidentiary hearing, the Court heard testimony from Guam Police Department Officer Richard Sili.[1] Having considered the evidence, the parties' arguments and the applicable law, the Court GRANTS IN PART and DENIES IN PART the Motion to Suppress.

## I.  FACTUAL BACKGROUND

On July 19, 2017, GPD officers responded to a reported home invasion and disturbance in Tamuning. When the officers arrived, the victim pointed out Rechim as the offender.

There are three instances in which Rechim made statements to police. In the first instance, after the victim pointed out Rechim, who was sitting on a rock, Sili approached him, handcuffed him, and attempted to read Rechim his Miranda rights. During the Miranda warning,

---

[1] Attorney William Pole represents Defendant Rechim; Assistant Attorney General Christine Tenorio represents the People of Guam.

**ORIGINAL**

Rechim interrupted Sili three to four times, yelling at the officers and the victim. Mot. Hrg. at 3:07:30 - 3:07:35 (Jan. 26, 2018). Sili heard Rechim say "Take me to DOC," "Rechim not going to tell you anything," "I don't care" and "Been there before." Mot. Hrg. at 2:41:48 - 2:42:04, 3:04:48 - 3:05:04, 3:07:35 - 3:08:02, 3:16:50 - 3:17:06. The People presented no clear evidence of the order of the statements. Rechim also said other things, including cuss words, but Sili did not understand all of Rechim's statements, and interpreted Rechim's behavior as mouthing off. Sili further testified that despite the interruptions, he completed the Miranda warnings, including expressing Rechim's rights to an attorney and to remain silent. Sili denies that Rechim requested for an attorney. Although he did not understand everything Rechim yelled, Sili claimed he would have understood if Rechim requested for an attorney. Mot. Hrg. at 3:10:45 - 3:11:24.

In the second instance, Sili wanted to deescalate the situation and to calm Rechim's continued outbursts against the officers and Victim. He decided to transport Rechim to the precinct for an interview, and escorted him to a police vehicle. At the vehicle Rechim remained disruptive. For the purported purposes of calming him down for his safety, Sili asked Rechim him why he was there. Sili contends Rechim responded he was "here for the vehicle."[2] Sili also testified that his police report disclosed other statements Rechim made at the vehicle, however, the police report submitted to the Court does not contain any statements by Rechim other than "is from Maite."[3] Mot. Hrg. at 2:43:18 - 2:43:26. According to Sili, Rechim also said he "didn't care." Mot. Hrg. at 2:43:48 - 2:44:14.

In the third instance, the police presented Rechim with a custodial interrogation form at the precinct. He signed a written waiver of his Miranda rights. Rechim denies making further

---

[2] The People claim Rechim said "Yes, I am here to break into vehicle." People's Proposed Finds. Fact and Concls. Law at 3 (Feb. 6, 2018). The Court does not find any evidence Rechim made this statement.
[3] In this respect, the police report submitted by Rechim under seal appears incomplete. Nonetheless, it is the People's obligation to provide evidence of statements made by Rechim.

ORIGINAL

statements, but the People disagree, making it unclear what statements Rechim made at the precinct. According to Rechim, he "provided no information other than he did not commit the crime as alleged." [Def.'s] Prop. Finds. Fact and Concls. Law at 12 (Feb. 6, 2018). On the other hand, the People claim that Rechim made statements, which led to his formal arrest. People's Prop. Finds. Fact and Concls. Law at 3. No particular statements made at the precinct were presented at the hearing.

## II.    LAW AND DISCUSSION

### A.  Evidentiary Considerations

Rechim supported his Motion to Suppress with a Declaration attesting to his version of the events on July 19, 2017. However, Rechim did not testify at the suppression hearing. While Rechim relied upon his Declaration at the suppression motion hearing, it carries "little weight, if any, when government witnesses testify at suppression hearings, and a defendant, who originally submitted the affidavit, does not." *People v. Santos*, 1999 Guam 1 ¶ 24. Because the People introduced the testimony of Sili, who was cross-examined by Rechim's counsel, and because Rechim declined to testify, the Court affords the Declaration minimal weight.

The Court also finds Sili's testimony to be credible. Although not presenting a complete memory of Rechim's statements, Sili conveyed a credible memory of the events in question, and gave no reason for the Court to interpret his testimony as fabricated or inaccurate.

### B.  Rechim's Statements

#### 1.  Statements Made While Sitting on the Rock

The Fifth Amendment prohibits the government from compelling an individual to incriminate himself. *People v. Sangalang*, 2001 Guam 18 ¶ 11. The Fifth Amendment privilege against self-incrimination "attaches when the government subjects a defendant to custodial

ORIGINAL

interrogation." *Id.* "Custodial interrogation" occurs when law enforcement initiate questioning

"after a person has been taken into custody or otherwise deprived of his freedom of action in any

significant way." *People v. Farata*, 2007 Guam 8 ¶ 20 (quoting *Miranda v. Arizona*, 384 U.S.

436, 444 (1966)). Prior to the initiation of a custodial interrogation, the police must inform a

suspect of his right to remain silent. *People v. Sangalang*, 2001 Guam 18 ¶ 11.

However, "the special procedural safeguards outlined in *Miranda* are required not where

a suspect is simply taken into custody, but rather where a suspect in custody is subjected to

interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). This court must determine

whether Rechim was not just "in custody" but whether he was "interrogated" such that police

subjected him to "custodial interrogation" warranting advisement of Miranda rights prior to such

custodial interrogation. *Farata*, 2007 Guam 8 ¶ 22.

The People concede that Rechim was in police custody while at the scene, though not

arrested. However, when Rechim was handcuffed and provided Miranda warnings, no

interrogation had occurred. There is no credible evidence that, while Rechim sat at the rock, the

police either engaged in express questioning or its functional equivalent.[4] As Sili delivered the

Miranda warnings, Rechim interrupted him three to four times. However, the police had not

interrogated Rechim or tried to elicit any response from him. Therefore the critical aspect of

"interrogation" is missing in this first instance.

Instead, Rechim simply spoke out loud without any preceding questions or prompting.

"Volunteered statements of any kind are not barred by the Fifth Amendment." *Miranda v. Ariz.*,

384 U.S. 436, 478 (1966). What is barred are statements made in response to interrogation or

---

[4] The functional equivalent of interrogation includes any "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301.

ORIGINAL

other act of police compulsion. There being no questioning by police upon Rechim as he sat on the rock, though in handcuffs, his statements are deemed to have been voluntarily made.

### 2. Statements Made While in the Police Car

The Court now turns to whether statements Rechim made at and in the police car should be suppressed. When Sili questioned Rechim about his presence at the scene, two events had already occurred: first, Sili provided and completed his Miranda warning; and second, Rechim stated: "Rechim not going to say anything." The Court finds that in expressing that he was not going to say anything, Rechim invoked his Fifth Amendment right to remain silent. When a suspect invokes this right, all questioning must cease. *Id.* at 473-74 ("If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease").

Just because Rechim said he was not going to speak, but then made further statements while sitting on the rock, does not mean he waived his right. In *Michigan v. Mosley*, 423 U.S. 96, 101-04 (1975), the Supreme Court addressed the circumstances under which interrogation may be lawfully resumed after a defendant has invoked his *Miranda* rights. The Court found that nothing in *Miranda* could "sensibly be read to create a *per se* proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent." *Id.* at 102-03. The test of admissibility of statements is whether a defendant's "right to cut off questioning" was "scrupulously honored." *Id.* at 103-04. *See also State v. Gribble*, 66 A.3d 1194, 1201 (N.H. 2013) (prosecution must prove beyond a reasonable doubt that the defendant, without improper prompting, initiated conversation with the police about the subject of the charges).

ORIGINAL

The Court finds that Sili's question about Rechim's purpose at the scene did not honor Rechim's earlier assertion of his right to remain silent. Sili's question undoubtedly sought to elicit an incriminatory response. Even if Sili's motive was to calm Rechim down, the motive is irrelevant. The Court's analysis focuses on the perception of the suspect rather than the perception of the police. *Innis*, 446 U.S. at 301. Rechim perceived that he was in custody, placed in a police car, informed he would be interrogated, and then asked a question about why he was there. In other words, the police placed Rechim in a highly intimidatory, contained environment and then disregarded his earlier declaration that he will not say anything. Although the People claim the question was not intended to gain incriminatory information, the People now, contradictorily, wish to use Rechim's response for that exact purpose.

The Court also finds that Rechim's invocation was unambiguous. In *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010), the Supreme Court required a suspect to invoke a right to remain silent unambiguously, and recognized that the simple statement that a suspect does not want to talk with police sufficed. Rechim also made this simple statement, rendering it an unambiguous desire to remain silent.

Moreover, Rechim did not waive that right to remain silent by making further statements while being Mirandized. The Court must determine whether the defendant, rather than the police, initiated the conversation in a manner evincing a "willingness and desire for a generalized discussion about the investigation." *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983). Here, Rechim did not initiate any discussion with Sili. He had been escorted from the rock to the police car, at which point Sili asked him a question likely to elicit an incriminating response. Any response by Rechim was made in violation of his right to remain silent, a right he previously unambiguously invoked and did not waive.

ORIGINAL

Therefore all statements made by Rechim following Sili's question (up until he signs a written waiver, discussed below) are suppressed.

### 3. Statements Made at the Precinct

When Rechim arrived at the precinct, the police presented him with the Custodial Interrogation Form, and Rechim signed the waiver. The Court finds no evidence to invalidate Rechim's written waiver. Once Rechim waived his rights in writing, the police were free to question him. Rechim also originally claimed that he invoked his right to counsel, however, because Rechim did not testify to this fact, the Court takes as credible Sili's testimony that Rechim never requested an attorney.

Therefore any statement Rechim made at the precinct is admissible.

## III. CONCLUSION AND ORDER

The Court finds that Rechim's statements while sitting at the rock were voluntary and that he waived his rights in writing prior to making any statements at the precinct. Therefore, as to these statements, Rechim's Motion to Suppress is **DENIED**.

However, since Rechim asserted his right to remain silent when he stated "Rechim not going to say anything" Sili should not have asked Rechim any questions in the police car. As to Rechim's statements made after Sili posed his question up to the time he waived his rights in writing, Rechim's Motion to Suppress is **GRANTED**.

SO ORDERED this 22nd day of February 2018.

_____
**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

SERVICE VIA COURT BOX
I acknowledge receipt of a copy of the
original here. It was placed in the
Court box of:

AG, W. Pole, S'Jdcw

Date: 2/22/18 Time: 4:30

Deputy Clerk, Superior Court of Guam

## ORIGINAL